# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

November 16, 2010

Tamra Ann Jones
Legal Services of New Jersey
100 Metroplex Drive
Suite 402
Edison, New Jersey 08818
    (*Attorney for Plaintiff*)

Tomasina DiGrigoli
Social Security Administration
26 Federal Plaza
Room 3904
New York, New York 10278
    (*Attorney for Defendant*)

    RE:    <u>Leonardo v. Commissioner of Social Security</u>
             <u>Civ. No. 10-1498 (WJM)</u>

Dear Counsel:

    Plaintiff Dionis Leonardo ("Leonardo") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits.  On appeal to this Court, Plaintiff contends that the Commissioner's administrative decision disallowing her claim is not supported by substantial evidence and must be reversed or remanded.  For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**

    Plaintiff Leonardo was born in the Dominican Republic and now resides in

Hudson County, New Jersey. (Administrative Transcript, hereinafter "Tr.," 53.) She graduated from high school in the Dominican Republic, and she speaks some English, though her dominant language is Spanish. (*Id.* at 53-57.) She lives with and cares for her nine-year-old son, and takes public transportation to appointments with her doctors. (*Id.* at 61-62.) She worked as a home health aide from 1997-2006, and before that she worked in a few warehouses packing and moving clothes. (*Id.* at 130.) She has not worked since 2006. (*Id.* at 58.)

Plaintiff filed concurrent applications for DBI and SSI on June 14, 2006, alleging disability due to herniated discs, headaches, and depression as of January 31, 2006. (*Id.* at 98-105.) Her claim was denied on October 26, 2006, and again on August 23, 2007. A hearing was held on February 10, 2009 before ALJ Richard De Steno. At the hearing, Plaintiff testified that she has pain throughout her body, strongest in her lower back, as well as headaches. (*Id.* at 60.) She explained that she can only sit or stand for five to ten minutes at a time, and can only walk a few blocks. (*Id.*) However, she went on to state that she does all the cooking, cleaning, and laundry, and takes care of her son on her own, and that she is able to take the bus to places such as medical appointments. (*Id.* at 61-62.) She described her painful headaches, which she said happen about three times a week. (*Id.* at 65.) She stated that she also has arthritis, which affects her legs, back, neck and hands. (*Id.* at 71-72.) She explained that her depression causes her anxiety and impedes her ability to concentrate. (*Id.* at 63.) She testified that her depression symptoms and her difficulty bending began in 2000, yet she continued to work as a home health aide until 2006. (*Id.* at 62-64.)

The ALJ also considered various medical records and reports submitted by Plaintiff. An MRI performed on July 25, 2006 showed a slightly small spinal canal, posterior disc herniation, and bilateral face hypertrophy, and X-rays done on October 26, 2006 showed "mild" facet arthritis. (*Id.* at 139, 144, 202.) However, an MRI performed on September 6, 2006 showed no evidence of cervical disc herniation and no spinal cord abnormalities, and electrodiagnostic studies done on October 17, 2006 were normal with no evidence of lumbar radiculopathy or peripheral neuropathy. (*Id.* at 210-14.) Plaintiff also had an MRI of her brain performed on November 1, 2006, which was classified as a "normal MRI of the brain" showing only pansinus inflammatory disease. (*Id.* at 142-43.)

In addition to medical test results, Plaintiff submitted records of treatments received. On May 3, 2006, Plaintiff sought emergency room care for back pain, and was diagnosed with acute sciatica to be treated with anti-inflammatory medication and muscle relaxants. (*Id.* at 153, 157-60.) She had already begun physical therapy for her back pain on April 24, 2006, which she continued through July 19, 2006 and which resulted in some improvement in her complaints of back pain. (*Id.* at 182-201.) On July 12, 2006,

Plaintiff again sought emergency care, this time for a headache. (*Id.* at 169-72.) She received a neurological exam that was within normal limits, and once treated intravenously with Reglan and Toradol she improved immediately. (*Id.*) She began treatment with a neurologist, Dr. Syed Jafri, on August 19, 2006. Dr. Jafri diagnosed Plaintiff with lower back pain, headaches, sinus disease, and a herniated disc, and prescribed Propoxyphene, a narcotic analgesic, for her headaches. (*Id.* at 215-29.) She then began treatment with a rheumatologist, Dr. Robert Fogari, on September 1, 2006. Dr. Fogari diagnosed her with a herniated disc as well as degenerative joint disease, and prescribed Relafen, an anti-inflammatory medicine. (*Id.* at 145-52.) Plaintiff also provided records from her monthly visits with a psychiatrist, Dr. Jose Soto-Perello, dating back to April 11, 2007. (*Id.* at 240-56.) Dr. Soto-Perello observed that Plaintiff was sad, anxious, and presented with a constricted affect, but noted that there was no evidence of cognitive problems or psychosis. (*Id.* at 240-52.) He prescribed Effexor to treat her depression. (*Id.* at 240-56.)

Dr. Soto-Perello and Dr. Fogari also filled out questionnaires regarding Plaintiff's residual functional capacity. (*Id.* at 230-39.) Dr. Fogari opined that she would be incapable of even "low stress" jobs, as she would need to stand and walk for ten minutes every thirty minutes, shift positions regularly, and keep her legs elevated 20% of the time. (*Id.* at 231-33.) Dr. Soto-Perello assessed a GAF score of 60, diagnosed her as having recurrent major depression, and noted that she was at least able to meet competitive standards in performing work-related mental activities, even though for most she would be "seriously limited" in her abilities. (*Id.* at 235-38.)

After considering the testimony and medical records provided, the ALJ issued his opinion on March 17, 2009, concluding that Leonardo was not disabled pursuant to 20 C.F.R. § 416.920(g). (*Id.* at 17-25.) Specifically, the ALJ made the following determinations: Plaintiff (1) has not engaged in substantial gainful activity since January 31, 2006, (2) has severe impairments involving a herniated lumbar disc, lumbar spinal stenosis, and lumbar facet hypertrophy, (3) does not have a combination of impairments that meets or equals those listed in 20 CFR Part 404, Subpart P, Appendix 1, (4) has the residual functional capacity to perform a full range of sedentary work and has no significant non-exertional functional limitations, and (5) can perform jobs that exist in significant numbers in the national economy. (*Id.* at 19-25.)

Plaintiff requested review by the Appeals Council, which was denied on January 28, 2010, and this action followed. Leonardo alleges the ALJ made the following errors when denying her claim: (1) the ALJ failed to include Plaintiff's depression and chronic headaches as severe impairments; (2) the ALJ failed to give the psychiatrist and rheumatologist's opinions adequate weight; (3) the ALJ failed to properly determine

Plaintiff's residual functional capacity; and (4) the ALJ erred in applying the Medical Vocational Guidelines and failing to obtain a vocational expert's testimony. These arguments will be addressed in turn.

## II.   DISCUSSION

### A.   Standard of Review

The district court has plenary review of the ALJ's application of the law. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir.1999). On the other hand, the factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S. § 405(g)). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir.2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Under the substantial evidence standard, the district court is required to review the record as a whole. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck*, 181 F.3d at 431.

### B.   The Five-Step Sequential Analysis

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ moves to step two to determine if the claimant's alleged impairments qualify as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires in step three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the ALJ moves on to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). In the fourth step, the ALJ decides whether, despite any severe impairment(s), the claimant retains the Residual Functional

Capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### C. The ALJ's Alleged Failure to Include Plaintiff's Depression and Chronic Headaches as Severe Impairments at Step Two

Plaintiff argues that the ALJ erred by not finding Plaintiff's depression and chronic headaches to be severe medically determinable physical or mental impairments under 20 C.F.R. §§ 416.920(c), 404.1520(c). Plaintiff points out that an applicant need only demonstrate something beyond a "slight abnormality or a combination of slight abnormalities which would have more than a minimal effect on an individuals ability to work." SSR 85-28; *Newell v. Comm'r of Social Security*, 347 F.3d 541, 546-7 (3d Cir. 2003). Plaintiff argues that she has demonstrated that her chronic headaches and depression reach this *de minimis* standard and should have been included in the list of severe impairments along with her lower back problems. The Court disagrees.

Under the Regulations, an impairment is not considered severe if "it does not significantly limit [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004); *Newell*, 347 F.3d at 546. The burden is on the plaintiff to show that the impairment is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, the ALJ did not find Plaintiff had met her burden regarding her complaints of headaches and depression. Regarding the headaches, the ALJ noted that the Plaintiff went to the emergency room only once, and that once there she improved immediately upon treatment. (Tr. 21.) Additionally, the ALJ recognized Plaintiff's prescription for a narcotic analgesic to treat her headaches, but stated that since the drug is for mild to moderate pain it did not show that she had a "disabling" medically determinable impairment. (*Id.* at 22.) Therefore, the ALJ found that Plaintiff's complaints of allegedly debilitating headaches were not credible as they were not supported by the objective medical evidence provided. (*Id.* at 22.)

As for Plaintiff's claim of depression, the ALJ found that any depression Plaintiff may be suffering from "had no greater than a slight or minimal impact [on]...the ability to perform basic work functions, and it therefore, has not constituted a 'severe' impairment." (*Id.* at 23.) While taking Dr. Soto-Perello's opinion and Plaintiff's

5

testimony into account, the ALJ also noted that Plaintiff takes care of her eight-year-old child and all household chores without assistance. (*Id.* at 22-23.)

The ALJ properly made the determination that Plaintiff's headaches and depression are not severe impairments based on all the relevant probative evidence. *See* 20 C.F.R. § 404.1527(b). Since "allegations of pain and other subjective symptoms must be supported by objective medical evidence," *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999), the ALJ correctly weighed Plaintiff's subjective claims of pain and depression against the objective evidence in making his findings on severity. The Court finds that the ALJ did not err at step two in determining that Plaintiff's depression and headaches were not considered "severe impairments."

### D.    The ALJ's Alleged Failure to Give the Psychiatrist and Rheumatologist's Opinions Adequate Weight at Step Four

Plaintiff alleges that the ALJ erred in choosing not to give Dr. Soto-Perello and Dr. Fogari's opinions controlling weight under 20 C.F.R. 416.927(d)(2) in determining Plaintiff's Residual Functional Capacity ("RFC"). However, controlling weight is only given to a treating source's opinion if "[it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 416.927(d)(2). Here, the ALJ analyzed both opinions and found that since they were provided on form questionnaires and did not refer back to objective medical tests (and possibly contradicted those tests), they should not be afforded controlling weight. (Tr. 23.)

Plaintiff focuses on the medical evidence on the record related to her depression and headaches in arguing that the ALJ should have given the doctors' opinions controlling weight. (Pl. Br. 21-25.) To support Dr. Soto-Perello's Mental Residual Functional Capacity Questionnaire, Plaintiff points to the findings of sadness and anxiety on examination and to Dr. Soto-Perello's diagnosis of major depression. (*Id.* at 22.) To support Dr. Fogari's Physical Residual Functional Capacity Questionnaire, Plaintiff identifies MRI, CT scan, physical therapy and clinical findings supporting Plaintiff's complaints of joint and back pain. (*Id.* at 24.)

While Plaintiff identifies evidence on the record to support a finding of some sort of medical limitations, in his ruling the ALJ focused on the fact that the evidence didn't support the level of severity reported in the questionnaires submitted by Dr. Soto-Perello and Dr. Fogari. (Tr. 22.) The ALJ recognized that Plaintiff has severe back impairments at step two, but went on to find that the medical evidence supporting Plaintiff's complaints of back pain was not enough to support Dr. Fogari's opinion that Plaintiff is

restricted to jobs even below sedentary work. (*Id.* at 19, 21-22.) An ALJ may discount a treating physician's assessment in light of evidence that the impairment exists but is less severe than assessed. *Lysak v. Comm'r of Soc. Sec.*, No. 09-184, 2009 U.S. Dist. LEXIS 103101, at *32 (D.N.J. 2009). Similarly, the ALJ did recognize that there is some evidence on the record of very minor mental limitations. (Tr. 23.) However, taking into account Plaintiff's testimony regarding her daily activities and responsibilities, the ALJ found that the evidence provided was not enough to support the "extensive mental functional limitations assessed by Dr. Soto-Perello...in his mental residual functional capacity questionnaire." (*Id.* at 22.) The ALJ did not err at this step and correctly followed 20 C.F.R. 416.927(d)(2) in determining not to give the doctors' opinions probative weight in light of all the medical evidence on the record. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. Pa. 1991) (finding that an ALJ correctly determined opinions were not controlling in light of conflicting and internally contradictory evidence).

### E. The ALJ'S Alleged Failure to Properly Determine Plaintiff's Residual Functional Capacity ("RFC") at Step Four

Plaintiff next argues that the ALJ failed to consider all the pertinent relevant evidence and the combined effects of the Plaintiff's impairments in determining her RFC. (Pl. Br. 25.) The ALJ must determine a claimants RFC before moving on to Steps Four and Five. Unlike Step Two, where the ALJ must only identify "severe" medical impairments, here the ALJ must consider all of Plaintiff's medically determinable impairments, including those that are not classified as "severe." 20 CFR 416.945(a)(2); 20 CFR 416.945(e). Plaintiff argues that the ALJ did not properly consider her non-exertional limitations, mainly her headaches, chronic pain, and depression, in determining that she had an RFC consistent with the full range of sedentary work. (Pl. Br. 25.)

In determining a claimant's RFC, the ALJ must consider all evidence in the record, and "may weigh the credibility of the evidence, …giv[ing] some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Commissioner*, 220 F.3d 112, 121 (3d Cir. 2000). This includes all medically determinable impairments. 20 C.F.R. § 404.1545(e) ("[w]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity"). However, *Burnett* does not require an ALJ to use any specific "magic words" or to adhere to a particular format in conducting the analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ is simply required to indicate how the evidence was weighed and evaluated, in a clear enough way to permit judicial review. *See Caruso v. Comm. of Soc. Sec. Admin.*, 99 Fed. App'x 376, 379-81 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120).

The ALJ's opinion shows that he properly addressed all the relevant evidence on the record, considered which evidence to afford less weight to or discredit, and which evidence he relied on and why. (Tr. 20-24.)  In determining Plaintiff's RFC, the ALJ found that Plaintiff's complaints of chronic, severe and recurrent headaches were not credible, as "the inability or failure to ascribe some etiology or cause to her headaches precludes a finding that they represent medically determinable impairments 'disabling' in nature." (*Id.* at 22.)  Additionally, the ALJ found that Plaintiff has had a mental functional limitation of, at most: "mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild deficiencies of concentration, persistence or pace; and no episodes of decompensation." (*Id.* at 23.)  The ALJ properly weighed the evidence of a very minor mental functional limitation against Plaintiff's testimony regarding her daily activities in determining that she has no significant non-exertional functional limitations. (*Id.* at 20, 22-23.)  Finally, the ALJ recognized that the objective medical evidence supported the existence of "some anatomical and physiological abnormalities in her spinal architecture (i.e. - a herniated lumbar disc, lumbar spinal stenosis and lumbar facet hypertrophy)." (*Id.* at 21.)  This evidence supports the ALJ's finding that Plaintiff is limited to the full range of sedentary work.  The ALJ then found that this objective evidence did not support the more restrictive RFC assessment by Dr. Fogari, of even below sedentary work, and properly declined to give Dr. Fogari's assessment significant probative weight. (*Id.* at 22.)

For each piece of medical evidence provided, the ALJ explained his reasoning behind the amount of probative weight accorded.  The Court therefore concludes that the ALJ properly weighed and evaluated all relevant medical reports and opinions on the record, and that the ALJ's findings with respect to the Plaintiff's RFC are supported by substantial evidence.

### F. The ALJ's Alleged Error in Applying the Medical Vocational Guidelines and Failing to Obtain a Vocational Expert's Testimony

Lastly, Plaintiff alleges that the ALJ committed reversible error in applying the Medical Vocational Guidelines and failing to obtain the testimony of a vocational expert for the step five analysis.  Generally, when a claimant presents non-exertional limitations, whether severe or not, a vocational expert must be used as the Medical Vocational Guidelines apply to exertional limitations only. *See Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000).  Plaintiff argues that her history of depression and headaches  necessitated the use of a vocational expert at this step. (Pl. Br. 26.)  Defendant argues that since the ALJ found that plaintiff did not have any significant non-exertional functional limitations, no vocational expert was needed. (Def. Br. 19.)  The Court agrees with Defendant.

In determining whether or not a vocational expert is required, the ALJ must decide whether or not the plaintiff's ability to function in the workplace is limited by any non-exertional functional limitations. *See Rupard v. Astrue*, 627 F. Supp. 2d 590, 607-608 (E.D. Pa. 2008). Therefore, while these limitations need not be severe to be considered, they still need to be significant enough to affect the plaintiff's workplace capabilities. *Id.* The Third Circuit has held that where the ALJ finds that some non-exertional limitations exist, but that they are insignificant, no vocational expert is necessary. *Caruso*, 99 Fed. Appx. at 381-82. Since the ALJ specifically found that Plaintiff "has not had any significant non-exertional functional limitations," the only issue is whether this finding was supported by substantial evidence. (Tr. 20.) *See Caruso*, 99 Fed. Appx. at 382. As discussed above, the ALJ examined all the medical evidence and Plaintiff's own testimony in determining whether her alleged headaches and mental impairment had any significant impact on her functional abilities. While the ALJ recognized that there was some evidence of mental impairment and headaches, taken as a whole, the evidence clearly supports the ALJ's determination that these impairments were not significant. Since the ALJ properly determined that Plaintiff has no significant non-exertional limitations, this Court finds that he did not err in applying the Medical Vocational Guidelines instead of obtaining a vocational expert's testimony.

### III.   CONCLUSION

For the foregoing reasons, the Commissoner's decision is **AFFIRMED**. An appropriate Order follows.

   /s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**